IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

GARY DENTAL, BALES AND
BRADY TOWING WEST, LLC, BRADLEY
KELLEY, AND TIMOTHY HALL,

      Plaintiff,

    v.

CITY OF SALEM/SALEM POLICE
DEPARTMENT, UNITED STATES
OF AMERICA, ANDREW ROBERTS,
MARK KEAGLE, BENJAMIN RUDDELL,
GERRIT ROELOF, TYSON HODGES,

      Defendants.

No. 3:13-cv-01659-MO

OPINION AND ORDER

**MOSMAN, J.**,

## INTRODUCTION

This suit involves claims for various constitutional and tort law violations stemming from an allegedly wrongful arrest and prosecution of two employees of a towing service, Messrs. Kelley and Hall. The two were arrested for state law charges of "obstructing governmental or judicial administration," in violation of ORS 162.235, when they refused to release three unmarked police cars they had towed for being illegally parked. Plaintiffs contend essentially that the arrest was unconstitutional and negligent because the officers lacked probable cause.

Before me are two motions to dismiss under Rule 12. First is a motion by Defendant Tyson Hodges [61], a DEA Agent who was present during the incident but did not actually arrest the Plaintiffs. Second is a motion made by the United States [62], as the employer of Agent Hodges. Unless otherwise noted, all facts are those alleged in Plaintiffs' First Amended Complaint ("FAC") [54]. For the reasons that follow, both motions are GRANTED.

1 – OPINION AND ORDER

## BACKGROUND

This case begins in a parking lot in an industrial neighborhood in Northeast Salem. In January of 2012, local business owner Randy Layne observed several vehicles parked in his lot without permission. The lot was marked to indicate it was for private parking and that unauthorized vehicles would be towed. On January 26, Layne left a note on one of the vehicles, which he later found crumpled on the ground. When he saw the cars parked there again the next day, Layne spoke with one of the Defendants, who did not identify himself as a police officer, refused to move the cars, and responded with expletives. Layne called the owner of the parking lot who then called a towing service to have the vehicles removed.

### I.     The Parties

Plaintiffs in this suit are the towing service, Bales and Brady Towing West ("BBW"), BBW's owner and operator, Gary Dental, and the two BBW employees who actually towed the cars and were subsequently arrested and prosecuted—Bradley Kelley and Timothy Hall.

Defendants are officers who made the arrest or were present during various parts of the incident.[1] They were all apparently members of an inter-agency narcotics task force operated by the Salem Police Department ("SPD"), the Keizer PD, and the United States Drug Enforcement Agency ("DEA"). The United States and the City of Salem are also Defendants.

\\
\\
\\
\\

---

[1] To be precise, the five individual officers named as Defendants are: (1) Andrew Roberts, SPD—the arresting officer, (2) Benjamin Ruddell, SPD—the officer who transported Kelley and Hall to the Polk County Jail, (3) Tyson Hodges, DEA—present during the arrest, (4) Gerrit Roelof, SPD—not present during the arrest, and (5) Mark Keagle, SPD Lieutenant—not present during the arrest.

2 – OPINION AND ORDER

## II.  The Incident and Arrest

Plaintiffs Kelley and Hall towed the three unmarked police cars from the lot where they were unlawfully parked and brought them to the BBW impound lot. (According to the City of Salem Defendants' Answer [58], the officers had been executing a search warrant, and upon its completion returned to find several of their cars had been towed.)

Officer Roelof, along with a non-defendant KPD Officer Johnson,[2] drove to the BBW impound lot, identified themselves as police officers, identified the three unmarked police vehicles that had been towed, and requested their release. Mr. Kelley called BBW dispatch, and informed Officer Roelof that, pursuant to BBW policy and a City of Salem Ordinance, some proof of ownership was required to obtain release of the vehicles.[3] Because Roelof did not have any such proof, Kelley refused to release the cars. Kelley did, however, allow Roelof to retrieve a bag from one of the cars that contained Roelof's personal identifying information. The officers left, telling Kelley that their supervisor would be there shortly with everything they needed.

Later, five officers arrived at the BBW impound yard. The group was composed of Defendants Roberts, Ruddell, and Hodges, Officer Johnson, and one other unidentified non-defendant officer. Three of the officers were plainclothes; two were in police uniforms. Defendant Roberts demanded Kelley and Hall release the vehicles, saying they were part of an

---

[2] Officer Johnson and the Keizer Police Department were initially named as Defendants, but prevailed in a motion to dismiss for failure to state a claim. *See* F&R [44] and Order and Opinion [46]. Plaintiff repled, and the First Amended Complaint [54] abandoned the claims against Officer Johnson and the Keizer Police Department.

[3] City of Salem Revised Code 102.155 addresses "Towing and Impoundment of Vehicles." It states that "[t]he owner of the vehicle, or any other person authorized by the owner to act on the owner's behalf, may redeem the vehicle pursuant to SRC 102.220." *Id.*  Section 102.220 says that "[t]he legal owner … or *person entitled to possession … may reclaim such vehicle … upon presentation of satisfactory proof of ownership or right to possession* to the chief of police or the purchasing supervisor, whoever has custody of said vehicle at the time of the claiming[.]" (emphasis added).

3 – OPINION AND ORDER

ongoing investigation. When Hall demanded proof of ownership, Defendant Roberts showed his badge and told Kelley and Hall that that was all the identification that was needed.

Hall made another call to BBW Dispatch to decide how to proceed. Dispatch put Hall on hold to try and reach Mr. Dental, the owner of BBW.[4] During this time, Officer Roberts told Kelley and Hall that they needed to release the vehicles immediately or they would be arrested. Rather than continue to wait, Roberts placed both Kelley and Hall under arrest. Plaintiffs say they were not informed of the charges against them.

The officers took Kelley and Hall's keys and used them to open the gate to the impound lot and retrieve their vehicles without authorization. When the officers had retrieved the cars, they locked the gate to the impound yard, but did not lock the door to the BBW office, leaving it open and unattended. Kelley and Hall were placed in the back of a patrol car.[5] Officer Ruddell later transported them to the Polk County Jail.

Kelley and Hall spent approximately six hours in jail, until Mr. Dental arrived and paid approximately $750 bail for each of them to be released. The Polk County Attorney's Office prosecuted the obstruction charges under ORS 162.235.[6] (Plaintiffs allege that this was at the continued behest of Defendants). Dental continued to pay Kelley and Hall their hourly wages for all time they were in jail, meeting with their attorneys, and in court proceedings related to this

---

[4] According to the City of Salem Defendants, Hall was on hold for an "extended period of time." Answer [58] ¶9.)

[5] While Kelley and Hall were held in the back of the police car—allegedly for an hour—an attorney with Lafky and Lafky arrived at the scene, identified himself as their attorney, and asked to speak with the officer in charge. Plaintiffs allege that Officer Roberts told him that he could talk to his clients, but when the attorney approached the car in which they were held, Officer Roberts instructed him to back away from the vehicle and not to speak with Kelley and Hall. When the attorney asked Roberts if they had proper identification to retrieve the vehicles, Roberts allegedly threatened to arrest the attorney as well.

[6] ORS § 162.235 states: "(1) A person commits the crime of obstructing governmental or judicial administration if the person intentionally obstructs, impairs or hinders the administration of law or other governmental or judicial function by means of intimidation, force, physical or economic interference or obstacle. (2) This section shall not apply to the obstruction of unlawful governmental or judicial action or interference with the making of an arrest."

4 – OPINION AND ORDER

incident. Approximately one year later, the case went to trial. The jury deliberated for roughly fifteen minutes, and Kelley and Hall were acquitted of the obstruction charges.

### III.    The First Amended Complaint

Plaintiffs' First Amended Complaint ("FAC") [54] brings claims for civil rights violations against Agent Hodges under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and against the individual SPD officers under 42 U.S.C. § 1983. Plaintiffs also claim malicious prosecution, negligence, and intentional infliction of emotional distress against the United States and the City of Salem.

## DISCUSSION

### I.    Defendant Hodges

Defendant Hodges moves for dismissal of the *Bivens* claim against him under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Agent Hodges states three grounds for dismissal: (1) Plaintiffs fail to state a claim because they have not plead facts sufficient to allege that Agent Hodges directly participated in the arrest; (2) qualified immunity should shield Agent Hodges from suit because he did not violate Plaintiffs' rights (again because he did not participate in the arrest); and (3) qualified immunity should shield Hodges from suit because it was at least arguable among reasonable officers that there was probable cause for the arrest. I agree with Defendants on the first two propositions, but decline to reach the issue of probable cause.

\\
\\
\\

### A.  *Failure to state a claim*

Plaintiffs do not set forth facts that raise a plausible claim for relief against Agent Hodges under *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ["*Moss I*"].

#### 1.  **Insufficient Personal Involvement**

Under both 42 U.S.C. § 1983 and *Bivens*, "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676.[7] "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677; *see also Wood v. Moss*, __U.S.__, 134 S. Ct. 2056, 2070 (2014) (declining "to infer from alleged instances of misconduct on the part of particular agents an unwritten policy of the Secret Service to [violate the Constitution], and then to attribute that supposed policy to all field-level operatives"). Translating this requirement into the pleading rules, "a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiffs have not done this in regards to Defendant Hodges.

##### a)  **Plaintiffs' factual allegations**

Plaintiffs assert that Agent Hodges violated the Fourth Amendment rights of Kelley and Hall to be free from unreasonable seizure because Hodges, "as a member and supervisor of the narcotics task force described above, was present and assisted in the arrest of Plaintiffs Kelley

---

[7] These cases, such as *Iqbal*, tend to involve a supervisor–subordinate relationship. While Plaintiffs have not made a plausible claim that this relationship exists, this makes little difference here. The *sine qua non* of *Iqbal* is personal involvement in the alleged violation, not a supervisory relationship. *See Iqbal*, 556 U.S. at 676–77.

6 – OPINION AND ORDER

and Hall that occurred without probable cause." (FAC [54] ¶ 56.) In attempting to explain *how* Hodges violated their rights, Plaintiffs walk through the alleged facts:

> Hodges and Roberts arrived at BBW together. Prior to their arrival, Hodges knew that Roberts would arrest Hall and Kelley if the vehicles were not returned. Hodges observed Hall on the phone with his supervisor attempting to get approval to release the vehicles without proof of ownership. *Hodges participated in the arrest of Kelley and Hall without probable cause by allowing Roberts to arrest them.* After arrest, Hodges showed approval and agreement with Roberts [sic] decision by retrieving his vehicle from the yard and locking the gate after all of the police vehicles were removed.
> (FAC [54] ¶ 56 (emphaisis added)).

Essentially, Plaintiffs allege that a "reasonable officer [in Hodges's position] would or should have known that Plaintiffs Kelley and Hall were not obstructing governmental administration." *Id.*

### b) What is the proper test?

To support their contention that this is sufficient to constitute a violation of the Fourth Amendment, Plaintiffs cite to *Adams v. Springmeyer*, 2012 WL 1865736 (W.D. Pa. 2012). In that case, Ms. Springmeyer was a superior officer who was sued under *Bivens* when officers under her command entered the plaintiffs' home to execute an arrest warrant on a previous renter of the home who had not lived there for several months and who was completely unrelated to the Plaintiffs' family. "[Officers] broke down the doors of Plaintiffs' home, forced Plaintiffs outside by shouting profanities and pointing assault weapons at them, and refused to answer any of their questions until they had assembled on the sidewalk." *Id.* at *1. The district court said that Plaintiffs had adequately plead a *Bivens* claim without relying on *respondeat superior*, because they had sufficiently alleged Ms. Springmeyer's personal involvement in the raid. The complaint alleged that Ms. Springmeyer was present during the raid, had in-person contact with the Plaintiffs, and that she "played an integral and active part in the attempted execution of the

7 – OPINION AND ORDER

arrest." *Id.* at *9. The court said this was unlike *Iqbal*, where the defendants had "mere knowledge" of the allegedly unconstitutional policy. *Id.*

Agent Hodges distinguishes *Springmeyer* on the facts, reasoning that, in that case, Springmeyer actually participated in or directed the claimed constitutional violations—unreasonable search, seizure, and excessive force. *Id.* at *7. Here, Agent Hodges was merely present during the arrest and did not actively participate in or direct the arrest of Kelley and Hall. Hodges also claims it is important that the arrest of Kelley and Hall was on a state law misdemeanor charge that was not drug-related, and therefore an arrest a DEA Agent would have no authority to direct or make.

Agent Hodges is correct. The constitutional violation alleged in this case is an unreasonable *seizure*. Agent Hodges did not make the seizure himself, he did not direct Officer Roberts to make the seizure, nor did he play "an integral and active part" in the seizure. *Id.* at *9. Plaintiffs try to characterize Hodges's presence, knowledge, and lack of intervention as sufficient participation, but this is virtually identical to what the Supreme Court rejected in *Iqbal*. In *Iqbal*, the plaintiff argued that a supervisor's "knowledge and acquiescence" in a constitutional violation by a subordinate were enough to establish liability. *Id.* at 677. The Court replied flatly, "We reject this argument." *Id.*

Nor does Agent Hodges' presence at the scene of the arrest make a constitutionally significant difference. While his presence may be evidence of some participation in the larger course of conduct leading up to the unreasonable seizure, it fails to establish liability for the actual seizure itself. Again, it is barely different than the facts alleged in *Iqbal*. There, the plaintiff named Attorney General Ashcroft as the "principal architect" of the plan to detain "person[s] of high interest" following the September 11th terrorist attacks, and FBI Director

8 – OPINION AND ORDER

Mueller as "instrumental in [its] adoption, promulgation, and implementation." *Id.* at 669. There is no question that they were participants in the larger course of conduct that lead to Iqbal's detention. However, Iqbal's complaint did not challenge his "arrest or confinement"; "[r]ather, it concentrate[d] on his treatment while confined." *Id.* at 668. When the Supreme Court focused on the actual violation alleged, it found Ashcroft and Mueller's knowledge and acquiescence insufficient for liability under *Bivens*.

I find the same logic applies here. At best, Agent Hodges played a marginal role in the entire incident by being present at the scene and taking his car out of the lot after the arrest had already been made. There is nothing to indicate the situation would have played out any differently had Agent Hodges not even been present that day. This is classic non-feasance— insufficient to make out a constitutional violation under *Iqbal*.

### 2.     Qualified Immunity

A *Bivens* action may be dismissed under Rule 12(b)(6) based on qualified immunity. *Dunn v. Castro*, 621 F.3d 1196, 1205 (9th Cir. 2010). In the context of this Fourth Amendment claim, the usual two part qualified immunity test applies. A government official enjoys immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, ___ U.S.___, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Applying this test, Agent Hodges is entitled to qualified immunity under either prong. First, as described above, his conduct as a mere observer of the arrest did not violate the Fourth Amendment. Second, it is not clearly established that officers must intervene in Fourth Amendment violations outside of the excessive force context.

9 – OPINION AND ORDER

To support their argument that qualified immunity does not apply, Plaintiffs cite *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) (the criminal prosecution against the officers involved in the Rodney King beating), and *Motley v. Parks*, 383 F.3d 1058, 1071 (9th Cir. 2004) (another excessive force case). However, neither of these cases supports Plaintiffs position.

The cited footnote from *Koon* states, "Pursuant to a long line of civil cases, police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Koon*, 34 F.3d at 1447 n.25 (collecting cases). At first glance, this quote seems to favor the Plaintiffs. But upon further inspection, this argument immediately breaks down. The cases cited show a Fourth Amendment duty that is clearly limited to the context of excessive force and that does not apply to Agent Hodges's situation.[8]

*Motley v. Parks*, 383 F.3d 1058, 1071 (9th Cir. 2004), is also more complex than the language Plaintiffs cite. In that case, Plaintiff Motley alleged violations of her Fourth Amendment rights based on an unlawful search, seizure, and excessive force after Los Angeles Police Officers and other agents searched her home supposedly looking for her boyfriend. *Id.* at 1060–61. When Motley answered the door, an LAPD officer identified himself and then lied to Motley, saying that her boyfriend was out of custody, when he was actually still incarcerated. The officer then threatened to arrest her and take her infant son into foster care if she did not let them in the home. *Id.* at 1061. One ATF agent remained outside, and three other officers entered

---

[8] One case cited did involve an unreasonable seizure. *Gagnon v. Ball*, 696 F.2d 17, 21 (2d Cir. 1982). But it does not stand for a general duty to intervene in all Fourth Amendment violations. Not only was the court reviewing a jury verdict in favor of the plaintiff, but the court was careful to note that the second officer "not only declined to intercede on [plaintiff's] behalf but also assisted [the first officer] in detaining her." *Id.* Those are not the facts here.

10 – OPINION AND ORDER

the home with guns drawn. Of those who entered the house, one officer continued to point his gun at Motley's baby for twenty minutes while they searched the home. *Id.* at 1062.

A divided panel of the Ninth Circuit said that this violated Motley's clearly established rights because the officers "conducted—or allowed the search to be conducted—in an unconstitutional manner." *Id.* at 1069 (the language Plaintiffs cite). "The searching officers showed no respect for Motley, her baby, her home, or her privacy. They lied to her, shoved her, made fun of her, and pointed a gun at her five-week-old baby." *Id.* at 1071. With the exception of the one ATF agent who did not enter the home, the other three officers "either participated in harassing and intimidating Motley and her child during the search, or failed to intervene to stop the harassment." *Id.*[9] Accordingly, the three who entered Motley's home were not entitled to qualified immunity. *Id.*

Not only does this case *not* stand for a general duty to intervene in all Fourth Amendment violations, it actually cuts against Plaintiff here. The *Motley* majority *affirmed* the grant of qualified immunity to Officer Webster, the agent who did not enter the home, holding his actions "reasonable under the circumstances." *Id.* at 1069. The three officers who went inside the home all took part in the unconstitutional search by entering the home under false pretenses. Agent Webster, by staying outside, did not participate in the search or fail to intervene in the excessive force that occurred inside the home. This is much like Agent Hodges. Because Agent Hodges did not participate in the seizure of Kelley and Hall, but was merely present at the scene, qualified immunity applies.

\\

---

[9] In the context of a parole search, it is clearly established law that conducting such a search in a harassing manner is unreasonable under the Fourth Amendment. *See United States v. Consuelo–Gonzalez*, 521 F.2d 259, 265 (9th Cir. 1975) (en banc).

11 – OPINION AND ORDER

### 3. Probable Cause

Finally, Agent Hodges argues that there was no violation of the Fourth Amendment because the arrest was supported by probable cause. Alternatively, Agent Hodges argues that when qualified immunity is stacked on top of the probable cause analysis, it was at least reasonably arguable that there was probable cause to arrest and therefore he is entitled to immunity. I decline to reach this question. Given my determination that Agent Hodges's conduct did not constitute sufficient personal involvement in the arrest, this analysis is unnecessary and would be premature at this point.

## II. United States

The United States is named as Defendant in claims for: malicious prosecution (claim 1), negligence (claim 3), and intentional infliction of emotional distress ("IIED") (claim 4). The United States brings this motion to dismiss [62] arguing that the claims against it should be dismissed because: (1) there is no subject matter jurisdiction for the negligence claims under the Federal Tort Claims Act, and (2) Plaintiffs fail to state a claim for relief based on malicious prosecution and IIED.

### A. *Negligence*

Under the Federal Tort Claims Act ("FTCA"), the United States waives its sovereign immunity in regards to tort claims like negligence "to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Thus, the United States is liable for torts committed by its employees if those torts are actionable under the law of the state where they occurred. *Ting v. United States*, 927 F.2d 1504, 1513 (9th Cir. 1991). Because this incident took place in Oregon, I look to Oregon law.

12 – OPINION AND ORDER

The parties first argue about whether or not there is even a cognizable theory of negligence that would apply to a wrongful arrest by a private party in Oregon. Defendant argues that under Oregon law, a private individual cannot be held liable for negligently arresting someone without probable cause, and therefore, such a claim falls outside the FTCA. (Def. U.S. Mot. to Dismiss [62] at 7.) Plaintiffs assert that such a tort exists, but the dicta they cite provides marginal—if any—support for this proposition. In *Brown v. Far West Federal Savings and Loan*, 66 Or. App. 387, 393 (1983), the Oregon Court of Appeals held that a bank had no duty to further investigate the apparent bank robbery in progress before calling the police to effect plaintiff's arrest. *Id.* at 393. *Copeland v. K Mart Corp.*, No. 97-35333, 1998 WL 560759 (9th Cir. 1998) is an unpublished opinion with no precedential value. But even there, the Ninth Circuit upheld a grant of summary judgment for the defendant, finding that a private citizen could not be liable in negligence because a "citizen owes no duty to investigate the circumstances" before instigating an arrest. *Id.* at *4.

Even assuming, without deciding, that such a private party analog for negligent arrest exists, it would be based in negligence. *See Terhune v. City of Salem*, No. 6:11–cv–6049–AA, 2013 WL 1363020, at *3 (D. Or. April 1, 2013) (applying Oregon negligence framework to a negligent arrest claim against public officers). Plaintiffs must state a claim under Oregon law, which they fail to do.

> A negligence complaint, to survive a motion to dismiss, must allege facts from which a factfinder could determine (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was the cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Graham v. Multnomah Cnty.*, 158 Or. App. 106, 109–10 (1999). In light of this framework, I turn to the particular allegations of the FAC.

13 – OPINION AND ORDER

### 1. Count one – arrest without probable cause

Causation is an essential element of any negligence claim. *See, e.g., Watson v. Meltzer*, 247 Or. App. 558, 568 (2011) (explaining that it is an "underlying requirement in all negligence cases . . . that a plaintiff must prove that, but for the defendant's negligence, the plaintiff would not have suffered the harm that has been alleged"). Plaintiffs have not shown that United States, or one of its agents, caused their arrests. As described earlier, the FAC contains absolutely no indication that Agent Hodges's presence at the scene of the arrest made any material difference. This does not sufficiently allege causation.

Plaintiffs argue that they have sufficiently pled negligence because they also allege that Officer Roberts, the officer who actually made the arrest, was a member of the inter-agency narcotics task force operated by the DEA and the SPD. (FAC ¶ 5.) Plaintiffs say that Officer Roberts was "at all times employed by the SPD and assigned to the drug enforcement unit and attached to the Salem DEA Resident Office."

I agree with Defendants on this point. There are no facts plead to support a claim that Officer Roberts was acting at the behest of Agent Hodges or any other federal agent, or that the arrest was made in service to the DEA. Defendants point out that DEA Agents are granted authority to cooperate with state police officers to investigate and enforce state *drug-related crimes*, *see* 21 U.S.C. §§ 873(a), 878(a), and note that the state law obstruction charge was not a drug related crime. I agree that, without more, Officer Roberts being "attached to" the DEA Office is not enough to impute the arrest to the United States.

### 2. Count 2 – failure to maintain/follow adequate policies

Plaintiffs concede this point and voluntarily dismiss count two of their third claim for relief. (Pls.' Resp. to Def. United States' Mot. to Dismiss [71] at 5.)

14 – OPINION AND ORDER

### B.     *Malicious Prosecution*

To state a claim for malicious prosecution under Oregon Law, a plaintiff must show: "(1) the institution or continuation of criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of the proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceeding; and (6) injury or damage because of the prosecution." *Singh v. McLaughlin*, 255 Or. App. 340, 352 (2013).

Plaintiffs here fail on element two. The *Singh* court also focused on this element. "We have frequently said that the test of whether the defendant instigated the prosecution is, 'was defendant actively instrumental in putting the law in force? . . . To impose liability there must be some affirmative action by way of advice, encouragement, etc.'" *Id.* at 352–53 (quoting *Gustafson v. Payless Drug Stores*, 269 Or. 354, 363 (1974)). Plaintiffs Kelley and Hall have not met this standard in regards to the United States or any federal agent working on its behalf. Plaintiffs allege merely that Agent Hodges was present and failed to intervene in the arrest. Plaintiffs have not alleged any "affirmative action" or otherwise shown that Agent Hodges was "actively instrumental in putting the law in force." *Id.* Plaintiffs do not state a malicious prosecution claim against the United States.

### C.     *Intentional Infliction of Emotional Distress*

To state a claim for IIED under Oregon law, a plaintiff must allege that "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's actions caused the plaintiff severe emotional distress, and (3) the defendant's actions transgressed the bounds of socially tolerable conduct." *Schiele v. Montes*, 231 Or. App. 43, 48 (2009). Again, Plaintiffs fail on the causation element. At best, Plaintiffs' claim is that Agent Hodges "allowed"

15 – OPINION AND ORDER

Officer Roberts to arrest the two. (FAC ¶ 56.) As described previously, this is not enough to meet the basic causation standard. The IIED claim against the United States also fails.

### III.    Conclusion

I hereby GRANT  Defendant Tyson Hodges's motion to dismiss [61] for failure to state a claim. I also GRANT Defendant United States' motion to dismiss [62] for lack of subject matter jurisdiction under the FTCA and for failure to state a claim. The claims against Agent Hodges and the United States are DISMISSED without prejudice.

DATED this    2nd    day of April, 2015.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

16 – OPINION AND ORDER